UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

TANISHA STEELE,

                   Plaintiff,                          Case Number 14-13640

v.                                              Honorable David M. Lawson

TOWNSHIP OF FLINT and GLEN HILL,

                   Defendants.

_____/

## OPINION AND ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Plaintiff Tanisha Steele filed this lawsuit alleging a violation of her Fourth Amendment rights after she was thrown to the ground and tased during an arrest by a Flint Township police officer for shoplifting. The defendants have filed a motion for summary judgment. Because the undisputed facts show that the officer reasonably perceived that the force he used was necessary to overcome Steele's resistance during the arrest, the individual defendant is entitled to qualified immunity. Therefore, the motion for summary judgment will be granted and the complaint will be dismissed.

I.

Defendant Glen Hill, a police officer with the Flint Township Police Department, was called to a T.J. Maxx store on September 25, 2012, in response to a complaint by store security officers who had observed two women shoplifting. Both women were detained by store security. One of the women was plaintiff Tanisha Steele. The plaintiff admits that while in the store she took a bra and panty set and put them in her purse so she could steal the garments.

When Officer Hill arrived at the store, Steele and her companion were at the loss prevention office at the rear of the store, with store security officers. Steele was standing outside the office, and

her friend was in the office with a security officer.  Hill did not say anything to Steele at first, but went into the loss prevention office for about three minutes.  While Hill was in the office, Steele heard her companion say that she was stealing clothes for Steele.  Hill came out of the office "and said, are you Tanisha Steele?"  Steele said that she was, and Hill then "proceeded with taking [her] arms and putting them behind [her] back."  Steele says that Hill did not tell her that she was under arrest; he just asked her if she was Tanisha Steele, and then "grabbed [her] arms . . . to get them behind [her] back."  Steele had been standing near the wall outside the office, and when Hill grabbed her wrists to put her arms behind her back, he had to force her to turn around; when she was facing the wall he "pushed her forward towards the wall."  Steele's mouth hit the wall hard enough as a result of the shove that it caused her two front teeth to loosen.  When Hill tried to put Steele's arms behind her back, Steele reacted by pulling her arms around in front of her.

After Steele pulled her arms back in front of her, Hill reacted by "toss[ing] [her] on the floor."  Steele testified that she could not "remember how [Hill] tossed [her] on the floor," but that "he got [her] on the floor some kind of way."  She conceded that she "could have slipped and fell on the floor."  However, Steele also testified that during the struggle and while Hill was trying to handcuff her, he "was just slinging [her] all around . . . like a ragdoll."  Once she was on the floor, on her back, Hill put his knee on Steele's chest to pin her.  When Hill removed his knee, Steele "turned over on [her] stomach some kind of way," so that Hill could not put his knee back on her chest.  Hill then said to Steele "give me your hands," but Steele refused to do so, because she "didn't feel like [she] should be arrested."  When Steele refused to put her hands out, Hill shocked her twice with his Taser.  The two Taser shocks were "one after another [] really fast."  Steele testified that

-2-

Hill tased her the first time "because [she] wouldn't bring [her arms] out," and she said after that, "[h]e just Tasered me again and I brought them out."

After Steele put her arms out, Hill lifted her up and put handcuffs on her.  The plaintiff estimated that "approximately six minutes" elapsed from the time that Hill came out of the office and asked the plaintiff if she was Tanisha Steele to the time she was handcuffed.  Steele testified that during the scuffle she did not try to hurt Hill, and she denied scratching or biting him.  Steele also stated that Hill never warned her that he was going to use the Taser before shocking her.

On the day she was arrested, Steele weighed approximately 112 pounds.  Hill weighed around 240 pounds.  Hill admitted that up through the time when he came back out of the loss prevention office, Steele had not done or said anything to indicate to him that she was going to flee, and she had stood outside the office while he went in and came back out.  Hill also stated that Steele did not have anything in her hands, and she did not have anything on her person that she "was trying to use against [him]"  or any sort of weapon.

Hill asserts that when he came back out of the office, he told Steele that she was under arrest, and when he grabbed her arms to put them behind her back, she turned to try and pull her arms away from him.  A scuffle ensued, and the two wound up on the floor, with Steele on her stomach, and Hill holding her down, on her back.  Hill contends that he then told Steele to stop resisting, or he would tase her.

On April 26, 2013, Steele pleaded guilty to retail theft and resisting or obstructing arrest. At her plea hearing on the resisting and obstructing charge, Steele admitted that she tried to steal panties and a bra from the T.J. Maxx store.  Steele also acknowledged that when Hill came into the store, he was in his police uniform, and it was obvious to her that he was a police officer.  She stated

-3-

that when Hill told her to put her arms behind her back, she asked him "for what," and then "a struggle ensued." When the court asked if Steele "understood that [Hill] was trying to arrest [her]," she answered "Yes." Steele added, however that she did not hit, bite, or scratch Hill during the scuffle, and she stated that if he was injured during the scuffle she did not know how it happened. Based on her admissions, the state court found Steele guilty of attempted resisting or obstructing a police officer causing injury. Steele affirmed in her later deposition testimony that the factual basis for her guilty plea to the resisting and obstructing charge was "for [] not letting him put the handcuffs on [her]."

On September 19, 2014, the plaintiff filed her complaint in this Court against Officer Hill and Flint Township. The complaint states two counts under 42 U.S.C. § 1983 alleging that Officer Hill violated the Fourth Amendment by using excessive force during the September 2012 arrest (Count I), and that Flint Township is liable for Hill's conduct on a supervisory liability theory, under *Monell v. Department of Social Services*, 436 U.S. 658 (1978) (Count II). After discovery closed, the defendants filed their timely motion for summary judgment, arguing that the force used to effectuate the arrest was reasonable, and Hill is entitled to qualified immunity.

## II.

The defendants have moved for summary judgment under Federal Rule of Civil Procedure 56. Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "The party bringing the summary judgment motion has the initial burden of informing the district court of the basis for its motion and identifying portions of the record that demonstrate the absence of a genuine dispute over material facts." *Alexander v. CareSource*, 576 F.3d 551, 5558 (6th Cir.

-4-

2009) (citing *Mt. Lebanon Personal Care Home, Inc. v. Hoover Universal, Inc.*, 276 F.3d 845, 848 (6th Cir. 2002)). "Once that occurs, the party opposing the motion then may not 'rely on the hope that the trier of fact will disbelieve the movant's denial of a disputed fact' but must make an affirmative showing with proper evidence in order to defeat the motion." *Ibid.* (quoting *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479 (6th Cir. 1989)). A party opposing a motion for summary judgment must designate specific facts in affidavits, depositions, or other factual material showing "evidence on which the jury could reasonably find for the plaintiff." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). If the non-moving party, after sufficient opportunity for discovery, is unable to meet his or her burden of proof, summary judgment is clearly proper. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). However, "[t]he court must view the evidence and draw all reasonable inferences in favor of the non-moving party, and determine 'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Alexander*, 576 F.3d at 557-58 (quoting *Anderson*, 477 U.S. at 251-52).

Irrelevant or unnecessary factual disputes do not create genuine issues of material fact. *St. Francis Health Care Centre v. Shalala*, 205 F.3d 937, 943 (6th Cir. 2000). A fact is "material" if its resolution affects the outcome of the lawsuit. *Lenning v. Commercial Union Ins. Co.*, 260 F.3d 574, 581 (6th Cir. 2001). "Materiality" is determined by the substantive law claim. *Boyd v. Baeppler*, 215 F.3d 594, 599 (6th Cir. 2000). An issue is "genuine" if a "reasonable jury could return a verdict for the nonmoving party." *Henson v. Nat'l Aeronautics & Space Admin.*, 14 F.3d 1143, 1148 (6th Cir. 1994) (quoting 477 U.S. at 248).

In a defensive motion for summary judgment, the party who bears the burden of proof must present a jury question as to each element of the claim. *Davis v. McCourt*, 226 F.3d 506, 511 (6th Cir. 2000). Failure to prove an essential element of a claim renders all other facts immaterial for summary judgment purposes. *Elvis Presley Enters., Inc. v. Elvisly Yours, Inc.*, 936 F.2d 889, 895 (6th Cir. 1991).

The defendants argue that (1) Officer Hill's use of force in pushing Steele against a wall and pinning her on the ground to secure Steele's compliance and place her in handcuffs was justified under the circumstances and not excessive; (2) the use of the Taser was justified because Steele admits that she actively resisted Hill's attempt to cuff her; (3) the Township is not liable on a failure-to-train theory because no constitutional violation occurred, and the plaintiff has not identified any policy, custom, or practice of the Township or its police department that was the driving force behind any unlawful conduct by Officer Hill; and (4) the plaintiff's claims are barred under the doctrine of *Heck v. Humphrey*, because any finding that Officer Hill used excessive force necessarily would negate the factual basis of the plaintiff's guilty plea to resisting and obstructing arrest in state court, where she admitted that she actively resisted Hill's attempts to arrest her.

The plaintiff argues that shoving her face-first against a brick wall and tasing her twice, without warning, were excessive and unreasonable uses of force by Officer Hill. The plaintiff cites principally *Baker v. Union Twp.*, 587 F. App'x 229 (6th Cir. 2014), where the Sixth Circuit held that shocking without warning a non-violent misdemeanor suspect, who was not fleeing from officers or resisting arrest, was unreasonable under the circumstances. The plaintiff argues that her claims are not barred by the doctrine of *Heck v. Humphrey*, because the Sixth Circuit has held that, under the relevant Michigan statute, the State is not required to prove as an element of a resisting or

-6-

obstructing arrest charge that the arrest resisted was entirely lawful or that any force used by the arresting officer was reasonable and not excessive. *Schreiber v. Moe*, 596 F.3d 323, 334 (6th Cir. 2010). Finally, the plaintiff asserts that, based on information uncovered during discovery, she is no longer pursuing her *Monell* claims against the Township.

## A

The plaintiff's failure to contest summary judgment against the Township does not automatically result in a dismissal. *F.T.C. v. E.M.A. Nationwide, Inc.*, 767 F.3d 611, 630 (6th Cir. 2014) (reiterating that "[e]ven where a party 'offer[s] no timely response to [a] [ ] motion for summary judgment, the District Court [may] not use that as a reason for granting summary judgment without first examining all the materials properly before it under Rule 56(c)'" (quoting *Smith v. Hudson*, 600 F.2d 60, 65 (6th Cir. 1979))). However, "the trial . . . court . . . will [not] *sua sponte* comb the record from the partisan perspective of an advocate for the non-moving party." *Guarino v. Brookfield Twp. Trs.*, 980 F.2d 399, 410 (6th Cir. 1992). The absence of record evidence supporting a claim for the Township's independent liability under *Monell v. Department of Social Services*, 436 U.S. 658 (1978), coupled with the plaintiff's acknowledgment that she no longer intends to press her claims against Flint Township, requires this Court to dismiss that defendant from the lawsuit.

## B.

The plaintiff has brought her claims against Officer Hill under the enabling provisions of 42 U.S.C. § 1983. "Section 1983 of Title 42 of the United States Code imposes civil liability on those individuals who, acting under color of state law, deprive a citizen of, among other things, his federally guaranteed constitutional rights." *Baynes v. Cleland*, 799 F.3d 600, 607 (6th Cir. 2015)

(citing *Brosseau v. Haugen*, 543 U.S. 194, 197-98 (2004)). "To state a claim under § 1983, a plaintiff must set forth facts that, when favorably construed, establish: (1) the deprivation of a right secured by the Constitution or laws of the United States; (2) caused by a person acting under the color of state law." *Ibid.* (citing *Sigley v. City of Parma Heights*, 437 F.3d 527, 533 (6th Cir. 2006)).

Steele argues, correctly, that the rule of *Heck v. Humphrey*, 512 U.S. 477 (1994), does not bar her lawsuit. In *Heck*, the Supreme Court held that a plaintiff seeking relief under 42 U.S.C. § 1983 cannot proceed on a claim when allowing her to do so would call into question the propriety of a prior criminal conviction that had not been set aside or expunged by judicial or executive action. The Court held that, "in order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus." *Humphrey*, 512 U.S. at 86-87.

However, the Sixth Circuit has held that a conviction for resisting or obstructing arrest under Michigan Compiled Laws § 750.81d does not bar a subsequent excessive force claim under section 1983, because the statute does not require that the State prove or the defendant admit that the arresting officer did not use excessive force. *Schreiber*, 596 F.3d at 334. "[I]n Michigan, one can be convicted under [Michigan Compiled Laws] § 750.81d(1) simply for a 'knowing failure to comply with a lawful command,' and the mere failure of [the plaintiff] to obey a police order would not have made the force [the officer] allegedly used reasonable." *Ibid.* (quoting Mich. Comp. Laws § 750.81d(7)(a)). "There are two circumstances [] in which an excessive-force claim might conflict

-8-

with a conviction.  The first is when the criminal provision makes the lack of excessive force an element of the crime.  The second is when excessive force is an affirmative defense to the crime." *Ibid.*  "In both of these circumstances, the § 1983 suit seeks a determination of a fact that, if true, would have precluded the conviction." *Ibid.*  However, "[n]othing in the text of Michigan Compiled Laws § 750.81d(1) [] suggests that the state must prove as an element of the crime [of resisting arrest] that the police did not use excessive force." *Ibid.*  "Indeed, the Court of Appeals of Michigan has found that a lawful arrest is not one of the elements of § 750.81d(1)." (citing *People v. Ventura*, 262 Mich. App. 370, 686 N.W.2d 748, 752 (2004)).

## C.

The core of the plaintiff's claims is that the force Hill used to complete the arrest was excessive.  The Sixth Circuit "applies the Fourth Amendment's unreasonable seizure jurisprudence when analyzing [excessive force] claims." *Baynes*, 799 F.3d at 607 (citing *Morrison v. Bd. of Trs. of Green Twp.*, 583 F.3d 394, 400 (6th Cir. 2009); *Kostrzewa v. City of Troy*, 247 F.3d 633, 639 (6th Cir. 2001)).  "Whether an officer has exerted excessive force during the course of seizure is determined under an objective reasonableness standard." *Id.* at 608 (citing *Morrison*, 583 F.3d at 401; *Graham v. Connor*, 490 U.S. 386, 396-97 (1989)) (quotations and alterations omitted in this and following citations).  "This inquiry requires balancing the consequences to the individual against the government's interests in effecting the seizure." *Ibid.* (citing *Burchett v. Kiefer*, 310 F.3d 937, 944 (6th Cir. 2002)).  "The assessment is fact-specific, based on the totality of the circumstances, and pays particular attention to the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether [s]he is actively resisting arrest or attempting to evade arrest by flight." *Ibid.* (citing *Kostrzewa*, 247 F.3d at 639; *Graham*, 490 U.S.

at 396).  The court must "judge the lawfulness of the conduct from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight ." *Ibid.* (citing *Morrison*, 583 F.3d at 401; *Graham*, 490 U.S. at 396).

"When making an arrest or investigatory stop, [a police officer] has 'the right to use some degree of physical coercion or threat thereof to effect it.'" *Kostrzewa*, 247 F.3d at 639 (quoting *Graham*, 490 U.S. at 396).  "Law enforcement officers are inevitably required to make difficult, split-second decisions regarding the amount of force needed in a particular situation, and '[n]ot every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates the Fourth Amendment.'" *Ibid.* (quoting *Graham*, 490 U.S. at 396-97)).

One might think that a 240-pound police officer, trained in making arrests, would be able to subdue a 112-pound, unarmed female without the use of much force, and certainly without using a Taser.  And Hill's ham-handed method of grabbing an apparently nonthreatening suspect who is not fleeing, with no warning, and without advising her that she is under arrest, and then spinning her around and shoving her face into a wall certainly seems gratuitous and unreasonable, in light of all the circumstances.  *See Morrison*, 583 F.3d at 407 ("'Gratuitous violence' inflicted upon an incapacitated detainee constitutes an excessive use of force, even when the injuries suffered are not substantial." (quoting *Pigram ex rel. Pigram v. Chaudoin*, 199 Fed. Appx. 509, 513 (6th Cir. 2006))).  Moreover, Steele's concession that she resisted Hill's attempt to cuff her does not, in itself, establish that his use of physical force was reasonable. *Martin v. City of Broadview Heights*, 712 F.3d 951, 959-60 (6th Cir. 2013) ("The Fourth Amendment's protections do not evaporate the moment an individual resists an officer's command."); *Lawler v. City of Taylor*, 268 F. App'x 384, 387 (6th Cir. 2008) (holding that a jury could find an elbow jab and knee strikes amounted to

-10-

excessive force against an arrestee who resisted being handcuffed while on the ground with an officer on top of him); *Baker v. City of Hamilton, Ohio*, 471 F.3d 601, 607 (6th Cir. 2006) (observing that the fact that the arrestee was not handcuffed when he was struck did not preclude a finding of unreasonableness).

There is no evidence that Officer Hill suspected Steele of anything more than a non-violent, minor retail shoplifting offense, and Hill admitted that Steele had given him no reason to fear for his own safety. However, although Steele testified that Hill never said she was under arrest, she admitted during her colloquy at the guilty plea hearing on the resisting and obstructing charge that she "understood that [Hill] was trying to arrest [her]." She also admits that she resisted Hill's attempts to handcuff her from the moment he grabbed her arms, during a struggle that, by her account, lasted approximately six minutes. And Steele concedes that she only relented and released her arms from under her body so that she could be handcuffed after Hill had tased her twice.

In light of all the circumstances, the shove that resulted in Ms. Steele's face hitting the wall could not reasonably be found to be excessive, since Steele concedes that she immediately began actively resisting Hill's attempts to handcuff her as soon as he grabbed her arms. The force that Hill used in attempting to control and handcuff Steele was, therefore, not excessive or unreasonable under the circumstances. By the plaintiff's own account, the shove was justified as an attempt by Hill to pin Steele against the wall in order to handcuff her, since Steele admits that she resisted Hill's efforts from the outset, despite her understanding that Hill was trying to place her under arrest. The First Circuit confronted similar facts in, *Fernandez-Salicrup v. Figueroa-Sancha*, 790 F.3d 312 (1st Cir. 2015), and determined that, even though the circumstances justified no more than a "minimal" use of force, summary judgment for the defendant police officer was required:

-11-

Assuming the encounter occurred as Fernandez describes — as we must in the summary judgment context — Fernandez was seemingly arrested for, at best, obstructing a police investigation and/or disorderly conduct by "disrespecting" [Officer] Rosado and talking back to her. Either, obviously, is not a severe crime, and — at least based on this version of events — the plaintiff never posed an immediate threat to Rosado or others. As such, only a minimal level of force by Rosado would be reasonable under the circumstances. Yet even with this low threshold, Plaintiffs are unable to establish a constitutional violation. In effectuating the arrest, Rosado shoved Fernandez face-first against a wall and proceed to handcuff her left wrist. There is no evidence in the record that this technique deviated from standard police practice. And, even if it did, the Supreme Court has recognized that "[n]ot every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates the Fourth Amendment." *Graham*, 490 U.S. at 396.

Rosado's shove of Fernandez may have been unnecessary, but it was not unreasonable. Similarly, there was no Fourth Amendment violation when Rosado pulled Fernandez's arm, effectively creating a tug-of-war between Rosado and the other students. Fernandez was attempting to escape arrest, and Rosado had a right to prevent Fernandez from doing so. We see nothing unreasonable with Rosado's refusal to let go of Fernandez or her decision to pull Fernandez away from the other students trying to help her escape.

*Fernandez-Salicrup*, 790 F.3d at 326-27 (citations omitted).

The use of the Taser likewise could not reasonably be found to be excessive, because Steele admits that she continued to struggle with Hill and to resist his attempts to pull her arms out from under her, once she was on the floor, and that he only shocked her at the end of a scuffle that lasted approximately six minutes. It is well established in the Sixth Circuit that use of a Taser to subdue a person who is actively resisting arrest is objectively reasonable:

[T]he question at hand is whether it was clearly established in May 2007 that using a taser repeatedly on a suspect actively resisting arrest and refusing to be handcuffed amounted to excessive force. The answer is no. Cases from this circuit and others, before and after May 2007, adhere to this line: If a suspect actively resists arrest and refuses to be handcuffed, officers do not violate the Fourth Amendment by using a taser to subdue him.

-12-

*Hagans v. Franklin Cnty. Sheriff's Office*, 695 F.3d 505, 509 (6th Cir. 2012) (collecting cases). The use of the Taser, therefore, even if it was deployed without warning, does not suffice to establish an unreasonable use of excessive force.

The plaintiff argues that the Sixth Circuit held to the contrary in *Baker v. Union Twp.*, 587 F. App'x 229 (6th Cir. 2014), where an officer, without warning, shot a non-violent misdemeanor suspect with a Taser, where the suspect had been fleeing, but had stopped. That case, however, is readily distinguishable because the plaintiff in *Baker* was not either attempting to flee or resisting arrest at the time of the Taser shot. *Id.* at 234. Unlike the plaintiff in *Baker*, Steele admits that she actively was resisting Hill's attempts to handcuff her when Hill shocked her, and, although she stated that the shocks were given in rapid succession, she concedes that she did not release her arms and stop resisting until after the second shock.

### D.

Even if hindsight might suggest that Hill used a level of force that was excessive, the call is a close one. And the defense of qualified immunity protects state actors in where the claim of a constitutional violation is a close call. *See Saucier v. Katz*, 533 U.S. 194, 206 (2001) (explaining that the defense is intended to protect state actors who must operate along the "hazy border" that divides acceptable from unreasonable conduct). That affirmative defense protects government actors performing discretionary functions from liability for civil damages when their conduct does "not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). The purpose of the defense is to strike a balance that "accommodates the tension between permitting litigants to recover damages, which is often the only realistic avenue for vindication of constitutional guarantees, and the social

-13-

costs of such suits, including the expenses of litigation, the diversion of official energy from pressing public issues, and the deterrence of able citizens from acceptance of public office." *Champion v. Outlook Nashville, Inc.*, 380 F.3d 893, 900 (6th Cir. 2004) (quotation marks and citation omitted).

"To determine whether a government official is entitled to qualified immunity, [the court must] make two inquiries: 'First, viewing the facts in the light most favorable to the plaintiff, has the plaintiff shown that a constitutional violation has occurred?  Second, was the right clearly established at the time of the violation?  These prongs need not be considered sequentially.'" *Baynes*, 799 F.3d at 609-10 (quoting *Miller v. Sanilac Cnty.*, 606 F.3d 240, 247 (6th Cir. 2010)). "The plaintiff bears the burden to show that the defendant is not entitled to qualified immunity." *Id.* at 610 (citing *Untalan v. City of Lorain*, 430 F.3d 312, 314 (6th Cir. 2005)).  "The issue of qualified immunity may be submitted to a jury only if 'the legal question of immunity is completely dependent upon which view of the [disputed] facts is accepted by the jury.'"  *Ibid.* (quoting *Humphrey v. Mabry*, 482 F.3d 840, 846 (6th Cir. 2007)).

"A right is 'clearly established' if '[t]he contours of the right [are] sufficiently clear that a reasonable official would understand that what he is doing violates that right.'"  *Ibid.* (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)).  "The relevant inquiry is 'whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted.'"  *Ibid.* (quoting *Saucier*, 533 U.S. at 202).  "The purpose of the 'clearly established' prong, clarified by the Supreme Court's decision in *Hope v. Pelzer*, is to ensure that officials are on notice that their alleged conduct was unconstitutional."  *Ibid.* (citing *Hope v. Pelzer*, 536 U.S. 730, 739, 741 (2002)). "As *Hope* made abundantly clear: 'the salient question . . . is whether the state of the law [at the time of the action giving rise to the claim] gave respondents fair warning that their alleged treatment of [the

-14-

plaintiff] was unconstitutional.'" *Ibid.* (quoting *Hope*, 536 U.S. at 741). "Although the focus of the clearly established prong is whether the official had notice that his alleged conduct was improper, . . . qualified immunity is an objective rather than a subjective inquiry." *Ibid.* (citing *Caudill v. Hollan*, 431 F.3d 900, 911-12 (6th Cir. 2005); *Cope v. Heltsley*, 128 F.3d 452, 458 (6th Cir. 1997)). "In *Hope*, the Supreme Court established that, for purposes of qualified immunity, the precise factual scenario need not have been found unconstitutional for it to be sufficiently clear to a reasonable official that his actions violate a constitutional right — that is, for the right to be 'clearly established.'" *Ibid.* (quoting *Hope*, 536 U.S. at 739, 741).

Where a defendant asserts a defense of qualified immunity, he "'must be willing to concede the most favorable view of the facts to the plaintiff.'" *Younes v. Pellerito*, 739 F.3d 885, 888 (6th Cir. 2014) (quoting *Thompson v. Grida*, 656 F.3d 365, 367 (6th Cir. 2011)). The plaintiff contends that "slamming Plaintiff's face and mouth against a brick wall and tasing Plaintiff twice was excessive and unreasonable," and her account of Officer Hill's behavior is troubling. Hill admits that he walked past Steele as she was standing in the hallway, then came back out of the room after speaking to her friend about the shoplifting charges. During the conversation, Steele heard her friend admit that she was stealing items for Steele. And Hill conceded that, before he grabbed her, Steele had not given him any indications that she was going to flee. He also admitted that she did not have a weapon or anything else that could hurt him in her hands. Moreover, Hill had an overwhelming physical advantage over the diminutive Steele, who was less than half his weight. Hill did not even say to Steele that she was under arrest, but instead simply asked her name, and, when she confirmed her identity, he immediately grabbed her arms and tried to spin her around in order to put handcuffs on her. When she was facing the wall, Hill shoved Steele hard enough

-15-

against it to loosen her two front teeth.  Moreover, although Steele admits that she resisted Hill's attempt to handcuff her, because she did not think she should be arrested, during the ensuing scuffle, again, without warning, Hill tased Steele twice in rapid succession; by the plaintiff's account, without allowing her any time to comply between the first and second shocks.

But as discussed above, Steele admitted to resisting Hill's attempts to subdue her.  And in the heat of the moment, Hill could have believed that the diminutive and wiry Steele might get the better of him.  In light of Steele's admissions that she actively resisted Hill's attempts to handcuff her from the moment Hill emerged from the loss prevention office, the facts, even in the light most favorable to the plaintiff, do not show that Hill's application of force was clearly excessive. Therefore, he is entitled to qualified immunity.

III.

The undisputed facts demonstrate that the degree of force used by defendant Hill to effectuate the arrest of the plaintiff likely was not excessive.  When viewing the facts in the light most favorable to the plaintiff, the plaintiff has not shown that defendant Hill violated her constitutional rights under the Fourth Amendment that were clearly established at the time of the alleged violation.

Accordingly, the defendants' motion for summary judgment [dkt. #19] is **GRANTED**.

It is further **ORDERED** that the complaint is **DISMISSED WITH PREJUDICE**.

s/David M. Lawson               <br>DAVID M. LAWSON<br>United States District Judge

Dated:  October 27, 2015

-16-

**PROOF OF SERVICE**

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on October 27, 2015.

s/Susan Pinkowski
SUSAN PINKOWSKI